IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARL BUTLER,<br>    **Plaintiff,**<br><br>    v.<br><br>UPPER MERION TOWNSHIP, et al.,<br>    **Defendants.** | CIVIL ACTION<br><br><br><br><br>NO.  22-3638 |

<u>MEMORANDUM</u>

**HODGE, J.**                                                                                                   February 6, 2025

## I.   INTRODUCTION

Plaintiff Karl Butler ("Plaintiff" or "Butler") asserts in his Complaint the following four claims against Defendant Upper Merion Township (the "Township Defendant" or the "Township") and Defendants Jane/John Doe Officers 1-15 (the "Officer Defendants" or the "Officers"): (1) State-Created Danger pursuant to 42 U.S.C. § 1983 (Count I); (2) *Monell* Municipal Liability pursuant to 42 U.S.C. § 1983 (Count II); (3) Fourth and Fourteenth Amendment: Failure to Intervene (Count III); and (4) Intentional Infliction of Emotional Distress (Count VII). (ECF No. 1.)

Presently before the Court is the Township and Officer Defendants' (together, the "Defendants") Motion to Dismiss (the "Motion") Counts I, II, III, and VII. (ECF No. 6.) Plaintiff opposes the Motion. (ECF No. 8.). For the reasons that follow, the Court grants in part and denies in part the Township and Officer Defendants' Motion. The Court grants the Motion as to Count II as to both Defendants. The Court denies the Motion as to Counts I and III as to both Defendants.

As for Count VII and Plaintiff's request for punitive damages, the Court grants the Motion as to the Township Defendant and denies the Motion as to the Officer Defendants.[1]

## II.     BACKGROUND[2]

The Court takes the facts set forth in Plaintiff's Complaint as true solely for purposes of this Motion to Dismiss. On September 12, 2020, Butler's then girlfriend ("J.H.")[3] was in the living room of her home when she heard someone outside of her window. (ECF No. 1 at ¶ 24.) A review of her internal surveillance camera revealed an unidentified individual opening her living room window from the outside. (*Id.* at ¶ 27.) J.H. called Butler and the next day he and a friend went to J.H.'s house to secure the lock on the window. (*Id.* at ¶ 28.)

On September 13, 2020 at approximately 7:30 p.m., J.H., her child, and Butler were eating dinner in her living room when a brick was thrown through the front window. (*Id.* at ¶ 29.) Butler and J.H. immediately called the Upper Merion Township Police Department ("UMPD"). (*Id.* at ¶ 30.) Upon arrival at J.H.'s home, UMPD became aware that they were also responding to an arson of Butler's vehicle. (*Id.* at ¶ 32.) Butler and J.H. told the UMPD officers at the scene (collectively "Officers") that they believed Defendant Julius Mayo ("Mayo") was responsible (ECF No. 1 at ¶ 35.) Butler and J.H. explained to the Officers that he and J.H. were in a relationship and that Mayo had been harassing J.H. for years and Butler for months. (*Id.* at ¶ 36.) Butler informed the Officers of specific examples of Mayo's harassing behavior. (*Id.* at ¶ 36–37.)

The Officers told Butler and J.H. not to stay in the home given the seriousness of the incident. (*Id.* at ¶ 41.) Officers also told Butler that his inoperable vehicle, which was blocking

---

[1] The Township and Officer Defendants do not move on Count IV and V, and the Complaint does not contain a Count VI. (ECF Nos. 1, 6.)
[2] The Court adopts the pagination supplied by the CM/ECF docketing system.
[3] J.H.'s name has been withheld by the parties for her own privacy and protection in light of her relationship history with Mayo.

J.H.'s car, could not be moved because it was evidence. (*Id.* at ¶¶ 43–45.) Butler and J.H. did not want to leave the home before the window was secured due to the risk of robbery. (*Id.* at ¶ 46.) The Officers said that a window service was not available at that time and could not come out until the next day. (ECF No. 1 at ¶ 47.) Butler and J.H., seeking the assistance of law enforcement, asked the Officers to be driven to Butler's home or the local police station or, in the alternative, that a patrol car stay at J.H.'s home until his car could be towed away. The Officers denied those requests. (*Id.* at ¶¶ 48–52.)

The Officers told Butler that additional police personnel would be assigned to canvas the neighborhood, but Plaintiff alleges that little canvassing took place. (*Id.* at ¶¶ 54, 57.) The Officers left the residence at approximately 9:30 p.m. (*Id.* at ¶ 55.) The Officers made no attempt to contact the reported perpetrator, Mayo. (*Id.* at ¶ 58.) Two hours later, Mayo returned and fired a gun through the living room window, striking Butler as he boarded the window that had been broken with a brick earlier. (*Id.* at ¶ 61.) As a result of the shooting, Butler suffered severe injuries. (ECF No. 1 at ¶¶ 62–64.)

On July 25, 2022, Mayo pled no contest to the charge of attempted murder of the first degree and guilty to aggravated assault, arson, stalking, possession of an instrument of a crime, simple assault, recklessly endangering another person, criminal mischief, loitering and prowling at nighttime, discharging a firearm into an occupied structure, and carrying a firearm without a license for firing into J.H.'s home and striking Butler. (*Id.* at ¶ 63.)

### III.   LEGAL STANDARD

In assessing whether Plaintiff has alleged claims upon which relief may be granted, the Court applies the familiar standard applicable to Rule 12(b)(6) motions to dismiss. A plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This standard "'does not impose a probability requirement at the pleading stage.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 546). Instead, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler*, 578 F.3d at 213).

## IV. DISCUSSION

### A. Defendants' Motion is Denied as to Plaintiff's State-Created Danger Claim (Count I).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Arnold v. City of Philadelphia*, 151 F. Supp. 3d 568, 575 (E.D. Pa. 2015) (citing *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d. Cir. 2013)). Butler's state-created danger § 1983 claim rests on the Due Process Clause of the Fourteenth Amendment, which provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV, § 1. (ECF No. 1 at 10–13.) Butler alleges that Defendants violated his constitutional right to bodily integrity and human dignity by creating a dangerous condition that was directly responsible for his being shot. (*Id.*)

4

"Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals." *Arnold*, 151 F. Supp. 3d at 575 (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198–200 (1989)). The Due Process Clause does, however, impose an affirmative duty upon the state "where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Id.* at 575 (quoting *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (emphasis in original) (internal citation omitted)). To prevail on a "state-created danger" theory, Butler must prove the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) there existed some relationship between the state and the plaintiff; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered him more vulnerable to danger than had the state not acted at all.

*Id.* at 575 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996) (internal citation omitted)).

The Third Circuit provided direction in *Kneipp v. Tedder* on the application of each prong in determining if the state-created danger theory is met. 95 F.3d 1199 (3d Cir. 1996). This Court has summarized *Kneipp* as follows:

> [T]he plaintiff was visibly intoxicated, smelled of urine, and stumbled as she made her way home with her husband on a winter evening. When the couple was less than a block from their home, police officers stopped them for causing a disturbance on the highway. As the officers questioned the couple, plaintiff's husband asked if he could go home to relieve the babysitter. The officers allowed him to leave while they continued to speak with plaintiff. Following their conversation with plaintiff, the officers sent her home alone, despite the freezing temperatures and her plainly intoxicated condition. Plaintiff was later found unconscious at the bottom of an embankment across the street from her

>apartment. She suffered from severe hypothermia resulting in brain damage, blindness, incontinence, and an inability to walk or to sit upright.
>
>On appeal, the Third Circuit reversed the district court's decision to grant summary judgment in favor of the defendants. In examining the elements of a state-created danger claim, the Third Circuit held that plaintiff's injuries were foreseeable because the officers were aware of her intoxication but nevertheless sent her home alone in freezing weather. For that same reason, the Court held that there was a material issue of fact regarding whether, having knowledge of her impairment, the officers willfully disregarded her safety. Finally, the Court held that "but for the intervention of the police," it was conceivable that the plaintiff would have returned home unscathed, escorted by her husband.

*Arnold*, 151 F. Supp. 3d at 575–76 (citing *Kneipp* 95 F.3d 1201–09). While the facts of this case are distinct from those in *Kneipp*, here, there is a similar question of whether "but for the intervention of the police" it is conceivable that Butler would not have been shot. For the reasons set forth below, Defendants' Motion is denied as to Plaintiff's state-created danger claim. Moreover, the Officers are not entitled to qualified immunity with regard to this claim.

    **1.**    **The Parties Do Not Dispute that There Existed Some Relationship Between the State and the Plaintiff**

The Court finds it is undisputed that there existed some relationship between the Butler and Defendants, as this element of the state-created test is not disputed by Defendants. (*See generally* ECF No. 6.)

    **2.**    **Plaintiff Sufficiently Alleges that the Harm He Suffered Was Foreseeable.**

To demonstrate that he was a foreseeable victim, Butler need only establish that the Defendants had "awareness of a *risk* of violence or harm," not that the Officers foresaw the specific circumstances of his shooting. *Arnold*, 151 F. Supp. 3d at 576 (quoting *L.R. v. School Dist. of Philadelphia*, 60 F. Supp. 3d 584, 590 (E.D. Pa. 2014) (emphasis in original)). The Officers were on notice of Mayo's history of harassment and abuse of J. H., as J.H. had made multiple complaints of harassment by Mayo to the UMPD and had sought a Protection from

6

Abuse ("PFA") Order against him. (ECF No. 1 at ¶¶ 11–15.) Butler also alleges that the Officers had knowledge that Mayo was responsible for throwing a brick through J.H.'s window earlier during the evening of the shooting. (ECF No. 8 at 15.) Defendants argue that (1) the Officers did not have actual knowledge that Mayo threw the brick through J.H.'s window; and (2) it was therefore not foreseeable that Mayo would later shoot Butler. (ECF No. 6 at 11.) Defendants assert further that "it is not reasonably foreseeable that throwing a brick through a window and slashing tires (criminal mischief) and lighting the car on fire (arson) would escalate, in a matter of hours, to shooting into a home (attempted first-degree murder and aggravated assault)." (*Id.* at 11–12.) At this stage, Butler must merely plausibly allege that the Defendants had an "awareness of a *risk* of violence or harm." Plaintiff need not *prove* that Defendants knew that Mayo was responsible for throwing the brick through J.H.'s window nor that Mayo's actions would escalate in violence and severity. The Court finds that Plaintiff's allegations regarding Mayo's known history of harassment and the Officers' awareness of that history is sufficient to plausibly allege that Defendants had "awareness of a *risk* of violence or harm."

### 3. Plaintiff Sufficiently Alleges that Defendants Acted with a Degree of Culpability that Shocks the Conscience.

The severity of conduct needed to shock the conscience "will depend upon the circumstances of each case, particularly the extent to which deliberation is possible." *Arnold*, 151 F. Supp. 3d at 577 (citing *Sanford*, 456 F.3d at 310). "The level of culpability required to shock the conscience will decrease as the time the state actors have to deliberate on their decision increases." *Arnold*, 151 F. Supp. 3d at 577 (citing *Sanford*, 456 F.3d at 306). In cases where action was taken following deliberation, conscience-shocking behavior may be established if the defendants' actions demonstrated deliberate indifference, "or perhaps gross negligence or recklessness" to the plaintiff's safety. *Id.* (citing *Sanford*, 456 F.3d at 306, 310). Deliberate

7

indifference requires "conscious [ ] disregard [ ] of a substantial risk of serious harm." *Id.* (quoting *Robinson v. Peirce*, 586 Fed. App'x 831 (3d Cir. 2014) (internal quotations and citations omitted)). Regardless of the standard applied, "[m]ere negligence is not enough to shock the conscience." *Arnold*, 151 F. Supp. 3d at 577 (citing *Sanford*, 456 F.3d at 311).

Defendants argue that Plaintiff's allegation that the Officers and the Township acted with a degree of culpability that shocks the conscious is "bald and conclusory" and "lacks factual basis." (ECF No. 6 at 12.) Plaintiff's allegation that Defendants' affirmative actions prevented Butler from leaving, either in his own car or in J.H.'s car, coupled with assuring Butler that they would canvass the neighborhood to look for suspicious persons without actually doing so, as discussed *supra,* refusing to transport J.H. and Butler to his home or the local police station, or have a patrol car stay on location at J.H.'s home, in totality, supports his allegation that Defendants' behavior, at this stage, shocks the conscience. The Court agrees and therefore finds that Plaintiff has sufficiently alleged that Defendants acted with a degree of culpability that shocks the conscience.

### 4. Plaintiff's Complaint Pleads Affirmative Actions by Defendants.

Defendants argue that Butler has not plausibly pled an affirmative use of authority; but rather he has merely alleged that the Officers and Township failed to intervene or protect, which is insufficient to support a state-created danger claim. (ECF No. 6 at 12.) Butler's allegation is not that Defendants failure to canvass the area, properly investigate, or remain on the scene constitute an affirmative action standing on their own. Rather, Plaintiff alleges that the Officers affirmatively represented to him and J.H. that "additional patrols would be assigned to the area and that they would canvas the neighborhood and look for suspicious persons," which plaintiff alleges was not done. (ECF No. 1 at ¶ 54.) Moreover, the Officers telling Butler that his car,

8

which was blocking J.H.'s car, could not be moved because it was evidence of a crime is coupled with the inaction of not providing the added patrols that the Officers assured would be given. (ECF No. 1 at ¶¶ 43–44.) Plaintiff alleges in his Complaint that these affirmative statements by the Officers constitute affirmative actions that resulted in the eventual harm he suffered by being shot by virtue of remaining in J.H.'s home. Plaintiff's argument is supported by the Third Circuit's holding in *L.R. v. School District of Philadelphia* that the affirmative action prong of the state-created danger test is satisfied if "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." 836 F.3d 235, 242 (3d Cir. 2016). The Court finds that Butler has sufficiently alleged that Defendants affirmatively used their authority in a way that rendered Butler more vulnerable to danger than if they had not acted at all by (1) preventing him from leaving J.H.'s house in his own car or in J.H.'s car, and (2) assuring Butler that they would canvass the neighborhood to look for suspicious persons and failing to do so or to look for the reported and known suspect, Mayo. (ECF No. 1 at ¶ 73). Moreover, the Officers also refused to take J.H. and Butler to his home or the local police station when asked. (ECF No. 1 at ¶ 52.)

### B.    Defendants Are Not Entitled to Qualified Immunity.

The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity: (1) whether the facts alleged by the plaintiff show a violation of a constitutional right; and (2) whether the right at issue is clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009). Having concluded *supra* that Butler has sufficiently alleged deprivation of his constitutional right under the state-created danger doctrine, the Court now focuses on the second step of qualified immunity which

is whether the constitutional right was clearly established at the time the violation occurred. *Arnold*, 151 F. Supp. 3d at 578.

"The principle underlying the second step of the analysis is notice." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). For a constitutional right to be "clearly established," it must be sufficiently clear such that "every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle*, 566 U.S. 658, 659 (2012)). "There need not be precedent directly on point for an official to lose the protection of qualified immunity; rather, 'in light of preexisting law the unlawfulness must be apparent.'" *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The state-created danger doctrine was first addressed by the Supreme Court in *DeShaney v. Winnebago County Department of Social Services*. 489 U.S. 189 (1989). *Id.* In *DeShaney*, the Court considered whether the Fourteenth Amendment substantive due process clause imposed an affirmative duty upon a state to protect a child from his abusive father while within his father's custody. *See generally id.* The state-created danger doctrine has been "thoroughly explored and defined" in the thirty-five years since *DeShaney*, and "[i]t has been clearly established in this Circuit . . . that a state-created danger violates due process." *Arnold*, 151 F. Supp. 3d at 578–79 (internal citations omitted). This Court therefore finds that Plaintiff has sufficiently alleged facts such that "every reasonable official would have understood that what he [was] doing violate[d] [the right to due process]." *Reichle*, 566 U.S. at 664 (internal citations omitted). Accordingly, Defendants are not entitled to qualified immunity.

### C. Defendants' Motion Is Granted as to Plaintiff's *Monell* Claims (Count II).

#### 1. Plaintiff's *Monell* Claim Against the Officers Is Dismissed.

Defendants assert that "[i]t is well established that *Monell* liability under § 1983 based on a municipal policy or custom applies only to municipalities, not to individuals." (ECF No. 6 at 14 (citing *Lepre v. Lukus*, 602 F. App'x 864, 869 n.4 (3d Cir. 2015) (concluding that the district court erred in applying the *Monell* test to the § 1983 claims against the individual defendant).) Defendants argue that the *Monell* claim Butler asserts against the individual officers must be dismissed with prejudice. (ECF No. 6 at 14.) Butler stipulates in his opposition to Defendants' Motion that "his *Monell* claims against the [Officers] in their official capacity is duplicative of his claim against the Township and [he therefore] withdraws his *Monell* claims against the [Officers] in their official capacity." (ECF No. 8 at 26 n.4.) Thus, Butler's *Monell* claims against the Officers are dismissed.

#### 2. Plaintiff's *Monell* Claim Against the Township Is Dismissed.

To establish a *Monell* liability claim, a Plaintiff must show that: (1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy "amount[ed] to deliberate indifference" to the plaintiff's constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989). A municipality can be held liable for civil claims "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006).

Butler alleges in the Complaint that the Township "had in force and effect during the time of [his] shooting, and for many years preceding the shooting, a policy, practice, or custom of unconstitutional[ly] minimally investigating domestic disturbances; and failing to conduct a reasonably thorough and fair investigation that considered evidence and grounds to arrest and prosecute." (ECF No. 1 at ¶ 83.) Butler further alleges that the "custom or policy of minimally investigating domestic disturbances was so permanent and well-settled that it virtually constituted law within [the Township]." (*Id.* at ¶ 84.)

Defendants contend that Butler's *Monell* claim must be dismissed because he fails to allege that the Township acted with deliberate indifference. (ECF No. 6 at 16.) Defendants rely upon Supreme Court precedent in support of their argument that for Butler to assert a failure to train or supervise claim, he must plead that the policymaker made a "deliberate" or "conscious" decision not to train or supervise. (ECF No. 6 at 15 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).) By way of *Canton*, Defendants argue that "[i]t is insufficient to prove that an injury or accident could have been avoided if an officer 'had better or more training, sufficient to equip him to avoid the particular injury-causing conducts.'" (ECF No. 6 at 16 (citing *Canton*, 489 U.S. at 390).) Defendants argue that Butler's "bald, conclusory language" not only fails to overcome the *Iqbal/Twombly* standard but also fails to allege that the Township acted with deliberate indifference. (ECF No. 6 at 16.) Butler counters that the Township's failure to implement substantive policy changes to address the Township's deficient policies and procedures regarding domestic violence incidents communicated to the Officers that they could continue to do minimal investigation without consequence. (ECF No. 8 at 27 (citing ECF No. 1 at ¶ 88).) Butler therefore claims that the Township's policy was one of "deliberate indifference

as to its known or obvious consequences." (ECF No. 8 at 27 (citing *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).)

The Court finds that, pursuant to *Canton*, merely alleging in a boilerplate fashion that the Township had a policy of minimally investigating domestic disturbances is insufficient to demonstrate that the Township made a "deliberate" or "conscious" decision not to train or supervise. *City of Canton*, 489 U.S. at 389. Plaintiff's allegation that the Township failed to implement substantive policy changes to address the Township's deficient policies and procedures regarding domestic violence incidents amounts to little more than *Monell* claim. Thus, Plaintiff's claim fails.

### D. Defendants' Motion Is Denied as to Plaintiff's Failure to Intervene Claim (Count III).

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (quoting *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986)).

Defendants argue that because Plaintiff's state-created danger claim fails, Plaintiff failed to sufficiently allege a constitutional violation, and therefore Plaintiff's failure to intervene claim must also fail. (ECF No. 6 at 17–18.) Because the Court finds that Plaintiff sufficiently alleged a state-created danger claim, it will not dismiss Plaintiff's failure to intervene claim on this basis. Defendants do not propose any other basis upon which Plaintiff's failure to intervene claim should be dismissed.

As for the question of whether the Officers failed or refused to intervene as the alleged constitutional violation took place, Plaintiff alleges that each of the Officers "had the requisite knowledge and a reasonable opportunity to intervene to prevent the creation of danger as each of

13

the [Officers] witnessed J.H. and [Plaintiff's] account of the increasingly threatening and bold actions of Defendant Mayo, which lasted over time, and was close enough to stop it from occurring and continuing." (ECF No. 1 at ¶ 92.) The Court finds that Plaintiff has sufficiently alleged that the Officers had an opportunity to intervene to prevent further danger to Plaintiff by taking actions "such as staying on the scene until Mr. Butler's vehicle was towed, until Mr. Butler had secured transportation to his home, until the window was boarded, and/or patrolling the area searching for Defendant Mayo," and they failed to do so. (*Id.* at ¶ 93.) Plaintiff has therefore sufficiently alleged at this stage in the litigation a plausible factual basis that the Officers could be found liable for failure to intervene under Section 1983 for observing and failing to prevent the creation of danger.

> E.   **Defendants' Motion Is Granted in Part and Denied in Part as to Plaintiff's Intentional Infliction of Emotional Distress Claim (Count VII).**

Plaintiff asserts an Intentional Infliction of Emotional Distress ("IIED") claim against both the Township and the Officers. To state an IIED claim, Butler must establish the following four elements: (1) the conduct at issue is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *e.g.*, *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir. 1979). For conduct to constitute "extreme and outrageous" it "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Company*, 861 F.2d 390, 395 (3d Cir.1988) (internal quotation omitted). Outrageous acts alone are not enough, a plaintiff must have suffered "some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 231 (3rd Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).

14

Defendant argues that, as to the Township, Plaintiff's IIED claim is barred by the immunity provisions set forth in the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541, *et seq.* (ECF No. 6 at 20.) Pursuant to the PSTCA, townships are generally immune from tort liability unless the alleged misconduct fits into one of a few narrow categories enumerated in the statute. *Walker v. North Wales Borough, et al.*, 395 F. Supp. 2d 219, 230 (E.D. Pa. 2005) (citing 42 Pa. Cons. Stat. §§ 8541–42). The PSTCA states, in pertinent part:

> Except as otherwise provided in the subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

*Id.* (citing 42 Pa. Cons. Stat. § 8541). The PSTCA grants broad immunity to municipal defendants based on intentional conduct, only waiving it with respect to eight narrow categories of "negligent acts." *Id.* (citing 42 Pa. Cons. Stat. § 8542(b)). Because Plaintiff's IIED claim is based upon intentional conduct, the Court finds that Plaintiff's IIED claim is dismissed as to the Township.

As for Plaintiff's IIED claim against the Officers, Plaintiff alleges that the Officers "used extreme and outrageous conduct against [him] by creating circumstances for further attack by Defendant Mayo." (ECF No. 1 at ¶ 107.) Plaintiff further alleges that actions of the Officers "were intentional or at least reckless and were done knowingly." (*Id.* at ¶ 109.) Butler contends that the Officers' conduct was extreme and outrageous because they knew about Defendant Mayo's alleged behavior, denied each of Plaintiff's requests for assistance, and refused to offer aid despite acknowledging that the home was not safe. (ECF No. 8 at 29.)

Defendants counter that the "[c]onduct that Pennsylvania courts have deemed sufficiently outrageous to constitute IIED includes: (1) killing plaintiff's son with an automobile and then

15

burying the body instead of reporting the incident to the police; (2) intentionally fabricating documents that led to plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing plaintiff with a fatal disease." (ECF No. 6 at 18–19 (citing *Gresh v. Cnty.*, 15-1466, 2016 WL 1162320, at *7 (M.D. Pa. Mar. 24, 2016) (internal citation omitted).)

The determination of outrageous conduct is within the "sound discretion of the fact-finder." *Arnold*, 151 F. Supp. 3d at 579 (quoting *SHV Coal v. Continental Grain Co.*, 587 A.2d 702, 705 (Pa. 1991)). Reading the facts in the light most favorable to Butler, and for the reasons discussed *supra* at Section IV.A, Butler has sufficiently alleged that the Officers recklessly acted in extreme and outrageous manner by (1) preventing him from leaving J.H.'s home, either in his own car or in J.H.'s car, (2) assuring Butler that they would canvass the neighborhood to look for suspicious persons without actually doing so, and (3) refusing to transport J.H. and Butler to his home or the local police station, or have a patrol car stay on location at J.H.'s home. Moreover, Butler has sufficiently alleged that he suffered severe emotional distress when he was shot. The Officer Defendants' Motion is therefore denied as to Plaintiff's IIED claim.

### F. Defendants' Motion Is Granted in Part and Denied in Part as to Plaintiff's Claim for Punitive Damages.

Plaintiff seeks punitive damages from both the Township and the Officers. (ECF No. 1 at 17.) Punitive damages in § 1983 cases are available where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987) (internal citation omitted). However, "punitive damages in general represented a limited remedy, to be reserved for special circumstances." *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir. 1989) (internal citation omitted).

Municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981). Accordingly, Plaintiff's claim for punitive damages against the Township is dismissed. As to the Officer Defendants, for the reasons set forth *supra* at Sections IV.A and IV.E, Plaintiff has sufficiently alleged at this stage that the Officers acted with a "reckless or callous disregard of, or indifference to" his rights and safety. Defendants' Motion is therefore denied as to the Officers Defendants.

## V.  CONCLUSION

The Court grants the Motion as to Count II as to both Defendants. The Court denies the Motion as to Counts I and III as to both Defendants. As for Count VII and Plaintiff's request for punitive damages, the Court grants the Motion as to the Township Defendant and denies the Motion as to the Officer Defendants.

An appropriate Order follows.

                                            **BY THE COURT:**

                                            **/s/ Hon. Kelley B. Hodge**
                                            **HODGE, KELLEY B., J.**